# IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

TRACY YU-SANTOS

    Plaintiff,

 v.

FORD MOTOR COMPANY, et al.,

    Defendants.

NO. 1:06-CV-01773-AWI-DLB

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING DEFENDANTS' MOTIONS TO EXCLUDE THE TESTIMONY OF WILLIAM BROADHEAD AND WILSON HAYES

(Documents # 57, #62 & #64)

## **INTRODUCTION**

Plaintiff Tracy Yu-Santos ("Plaintiff") has filed a wrongful death action against Defendants. Plaintiff's action arises from a vehicle rollover accident of a 1998 Ford Explorer on December 25, 2004, in which her two children, Keilan Tito Santos ("Keilan") and Tia Leilani Santos ("Tia") were ejected and killed. Plaintiff has sued Defendants for defective design and manufacture of the seat belts. This case comes before the court on a motion for summary judgment or, in the alternative, for summary adjudication brought by defendants TRW Vehicle Safety Systems Inc. ("TRW VSSI"), TRW Automotive Holdings Corp. ("TRW AH"), TRW Automotive Inc. ("TRW AI"), and TRW Automotive U.S. LLC ("TRW AU"), (collectively "Defendants"). Defendants have also filed motions to exclude the testimony of Plaintiff's experts

William G. Broadhead ("Broadhead") and Dr. Wilson C. Hayes ("Hayes") pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). For the reasons that follow, this court grants in part and denies in part Defendants' motion for summary judgment. Defendants' motions to exclude the testimony of Broadhead and Hayes are denied.

## **FACTUAL BACKGROUND**

The following facts are presented in the light most favorable to Plaintiff, the non-moving party.

On December 25, 2004, Christopher Miranda ("Christopher") was driving Plaintiff's 1998 Ford Explorer on Interstate 5 in Fresno County, California when he lost control of the vehicle. The vehicle left the roadway and overturned. Prior to the accident, Tia was sitting in the right front passenger seat and was wearing her seat belt. Keilan was sitting in the right rear passenger seat. Plaintiff's and Defendants' experts dispute whether Keilan was wearing his seat belt but Plaintiff and Robert Santos ("Mr. Santos") have both testified in their depositions that Keilan always wore his seat belt. Daniel Torres-Santos ("Daniel") was sitting in the left rear passenger seat and was also wearing his seat belt. Paloma Santos ("Paloma") was sitting in the center rear passenger seat and did not appear to have been wearing her seat belt. Christopher was in the driver's seat and was wearing his seat belt.

During the rollover, both of the Ford Explorer's passenger-side doors and the rear cargo door opened. Tia, Keilan, Daniel, and Paloma were fully ejected from the vehicle. Tia, Keilan, and Paloma were pronounced dead at the scene of the accident. Daniel was pronounced dead while en route to the hospital. Christopher was not ejected from the vehicle during the rollover and was the sole survivor of the crash.

The California Highway Patrol Central Division Multidisciplinary Accident Investigation Team's ("MAIT") supplemental report indicated that Tia's and Daniel's seat belt webbing had separated. Additionally, the MAIT report indicated that Keilan's seat belt buckle did not lock and unlock. Plaintiff testified during her deposition that Keilan's seat belt appeared to be functional

prior to the accident.

## **PROCEDURAL BACKGROUND**

On December 19, 2006, Plaintiff filed an amended complaint against Defendants alleging that Tia's and Keilan's seat belts were defectively designed and manufactured and caused their deaths. Plaintiff also named her ex-husband Mr. Santos as a nominal defendant because, as the father of Tia and Keilan, he is an heir to their estate. Plaintiff's first cause of action alleges strict products liability. Plaintiff's second cause of action alleges negligence. Plaintiff's third cause of action alleges breach of warranty. Plaintiff's fourth cause of action alleges failure to warn. Plaintiff designated Broadhead to testify about whether the seat belts performed properly during the accident. Plaintiff designated Hayes to testify about how Tia and Keilan sustained their injuries.

On November 17, 2008, Defendants filed a motion for summary judgment as to all causes of actions or in the alternative, for summary adjudication. Defendants contend they are entitled to summary judgment as to the first and second causes of action because Plaintiff cannot establish the existence of any probable seat belt defect or injury causation. Defendants contend they are entitled to summary judgment as to the third cause of action because TRW VSSI did not have a duty to warn as a component part supplier. Defendants contend they are entitled to summary judgment as to the fourth cause of action because Plaintiff lacks privity with the Defendants.

On November 17, 2008, Defendants filed separate motions to exclude the testimony of Plaintiff's experts Broadhead and Hayes.

On December 1, 2008, Plaintiff filed oppositions to Defendants' motion for summary judgment and motions to exclude the testimony of Broadhead and Hayes.

On December 8, 2008, Defendants filed a reply to Plaintiff's opposition and evidentiary objections to Broadhead's and Hayes's declarations in support of Plaintiff's opposition. Defendants request that this court strike both declarations.

The court took the matter under submission on December 11, 2008.

On December 12, 2008, the court received a letter drafted by nominal pro se defendant Mr. Santos. In the letter, Mr. Santos expressed his concerns with Plaintiff's causes of action. Mr. Santos's letter was not styled as a motion, an affidavit, or a declaration.

On December 16, 2008, the clerk of the court mailed Mr. Santos a clerk's notice informing him that his letter needed to be styled as a motion and not a letter pursuant to Rule 7. The clerk of the court mailed the notice to Mr. Santos's last known address on file with the court.

On December 23, 2008, the clerk's notice was returned to the court because the address was incorrect. Subsequently, a clerk of the court emailed and telephoned Mr. Santos regarding this matter but was unable to contact him. See Minute Order dated January 27, 2009.

On December 15, 2008, Plaintiff filed a surreply in support of her opposition. Plaintiff's surreply is based on the ground that her opposition should not be stricken because it was timely filed. On December 16, 2008, Defendants filed an objection to Plaintiff's surreply and request that the surreply be stricken because Plaintiff did not request permission from the court to file a surreply.[1]

## **LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v.

---

[1] Defendants contend in their reply briefs that Plaintiff's oppositions should be stricken from the record and that Plaintiff should not be heard in opposition because Plaintiff untimely served her oppositions in violation of L.R. 78-230. Although, Plaintiff electronically filed and served her oppositions fourteen (14) days before the hearing, rather than personally serving Defendants or electronically serving Defendants seventeen (17) days before the hearing, this court will not strike the oppositions nor dismiss Plaintiff's case.

Under L.R. 78-230, an untimely *filed* opposition may result in the party not being heard at oral argument. In the instant matter, Plaintiff timely filed her oppositions but did not timely serve her oppositions.

Parties who are untimely served may request additional time. Here, Defendants did not request additional time and given the Defendants' detailed reply briefs, additional time does not appear to be necessary. Thus, the court finds that the Defendants were not prejudiced by Plaintiff's untimely service of her oppositions.

4

American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004); Jung v. FMC Corp., 755 F.2d

708, 710 (9th Cir. 1985).  Where summary judgment requires the court to apply law to undisputed

facts, it is a mixed question of law and fact.  See Sousa v. Unilab Corp. Class II (Non-Exempt)

Members Group Benefit Plan, 252 F. Supp.2d 1046, 1049 (E.D. Cal. 2002).  Where the case turns

on a mixed question of law and fact and the only dispute relates to the legal significance of the

undisputed facts, the controversy for trial collapses into a question of law that is appropriate for

disposition on summary judgment.  See Union Sch. Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir.

1994); Sousa, 252 F.Supp.2d at 1049.

> always bears the initial responsibility of informing the district court of the basis for
> its motion, and identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any," which
> it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary

judgment should be granted, "so long as whatever is before the district court demonstrates that the

standard for entry of summary judgment, as set forth in Rule 56 (c), is satisfied."  Id. at 323.

If a moving party fails to carry its burden of production, then "the non-moving party has

no obligation to produce anything, even if the non-moving party would have the ultimate burden

of persuasion."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th

Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins., 210 F.3d

at 1103; Nolan v. Cleland, 686 F.2d 806, 812 (9th Cir. 1982); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A "genuine issue of material fact" arises when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248-49; Thrifty Oil, 322 F.3d at 1046.

In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56 (e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Willis v. Pacific Maritime Ass'n., 244 F.3d 675, 682 (9th Cir. 2001). However, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; Hopper v. City of Pasco, 248 F.3d 1067, 1087 (9th Cir. 2001). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587; Mende v. Dun & Bradstreet, Inc., 670 F.2d 129, 132 (9th Cir. 1982).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56 (c); Fortyune, 364 F.3d at 1079-80. The court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco

Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Mayweathers v. Terhune, 328 F.Supp.2d 1086, 1092-93 (E.D. Cal. 2004); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine, 210 F.3d at 1103.

In the alternative, Defendants move for summary adjudication on Plaintiff's four causes of action if summary judgment is not granted. Summary adjudication is proper when a court does not enter judgment upon the whole case or for all of the relief requested by the moving party. See Fed. R. Civ. P. 56 (b). Rule 56 requires the court to ascertain what material facts exist without substantial controversy and issue an order accordingly. See id. At trial, such facts shall be

deemed established.  See Fed. R. Civ. P. 56 (d).

**DEFENDANTS' DAUBERT MOTION**

**I.     Defendants' Arguments**

Plaintiff designated Broadhead as an "occupant restraint systems" expert who will opine on seat belt defects and injury causation.  Plaintiff designated Hayes to testify about the biomechanics[2] of injury causation and accident reconstruction analysis.  Defendants contend that summary judgment is warranted because Plaintiff's experts' testimony is inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Defendants move to exclude Broadhead's and Hayes's testimony pursuant to Rule 702 on the grounds that they are not qualified and their methods are suspect.

Additionally, Defendants object to Broadhead's and Hayes's declarations in support of Plaintiff's oppositions on the following grounds: (1) vague and ambiguous; (2) irrelevant; (3) lack of qualifications; (4) contradicts prior testimony; (5) fails to comply with best evidence rule; (6) lack of foundation; (7) contains hearsay; (8) improper conclusion; (9) improper argument; and (10) lack of personal knowledge.[3]

**II.    Daubert Legal Standard**

Rule 702 governs the admissibility of expert testimony.  Pursuant to Rule 702, a witness qualified as an expert in "scientific . . . knowledge" may testify thereto if:  "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

---

[2] Hayes was designated to testify as to the mechanics of how Tia and Keilan received their fatal injuries in the accident.

[3] The court's admissibility ruling on Plaintiff's experts' testimony is only for purposes of Defendants' motion for summary judgment.  This ruling does not preclude the parties from raising new, subsequent, pre-trial evidentiary objections, such as motions in limine.  If a timely objection is made, the court will rule at that time.

The trial court acts as a gatekeeper to the admission of expert scientific testimony under Rule 702. Daubert, 509 U.S. at 579-580. The court must conduct a preliminary assessment to "ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." Id. at 589. This two-step assessment requires consideration of whether (1) the reasoning or methodology underlying the testimony is scientifically valid (the reliability prong); and (2) whether the reasoning or methodology properly can be applied to the facts in issue (the relevancy prong). Id. at 592-93; Kennedy v. Collagen Corp., 161 F.3d 1226, 1228 (9th Cir. 1998).

Reliable testimony must be grounded in the methods and procedures of science and signify something beyond "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590. The inferences or assertions drawn by the expert must be derived by the scientific method. Id. In essence, the court must determine whether the expert's work product amounts to "'good science.'" Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (quoting Daubert, 509 U.S. at 593). In Daubert, the Supreme Court outlined factors relevant to the reliability prong, including: (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community. Daubert, 509 U.S. at 593-94. The Supreme Court emphasized the "flexible" nature of this inquiry. Id. at 594. As later confirmed in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999): "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Id. at 141-42.

The relevancy, or "fit," prong requires that the testimony be "relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing party's case." Daubert II, 43 F.3d at 1315 (quoting Daubert, 509 U.S. at 597). Relevancy requires opinions that would assist the trier of fact in reaching a conclusion necessary to the case. See Kennedy, 161 F.3d at 1230.

The Daubert analysis focuses on the principles and methodology underlying an expert's

testimony, not on the expert's conclusions.  <u>Daubert</u>, 509 U.S. at 595.  However, the Supreme Court has cautioned that "conclusions and methodology are not entirely distinct from one another."  <u>General Elec. v. Joiner</u>, 522 U.S. 136, 146 (1997).  As such, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  <u>Id.</u> Nothing in either <u>Daubert</u> or the Federal Rules of Evidence requires the admission of opinion evidence connected to existing data "only by the ipse dixit of the expert."  <u>Id.</u>

**III.    Resolution Regarding the Admissibility of Broadhead's Expert Testimony**

      A.    <u>Broadhead's Qualifications</u>

      Defendants claim that Broadhead lacks the qualifications of an expert who can opine on seat belt performance and injury causation because Broadhead has never designed any seat belt components that have gone into automobile production and has never been employed by an automotive manufacturer.  Defendants rely on <u>Paris v. Ford Motor Co.</u>, No. 05-439 ACT-RLP, 2007 U.S. Dist. LEXIS 96627, *17 (D.N.M. May 25, 2007) for this proposition.  In <u>Paris</u>, however, the court excluded the seat belt expert's testimony because the methodology he used was deductive reasoning and because the expert testified that he did not have sufficient information to perform his analysis, including the lack of an accident reconstruction, surrogate study, and data about the seat position.  The instant matter is distinguishable because Broadhead followed a peer-reviewed methodology (as discussed below in the methodology section), relied on an accident reconstruction, and conducted a first-hand inspection of the seat belts.

      Defendants also contend that Broadhead is not qualified because he has never performed peer-reviewed, published research relating to the performance of seat belts in rollover accidents or been licensed as an engineer.

      The court does not agree that Broadhead lacks the requisite credentials to testify about the existence of seat belt defects.  Broadhead's curriculum vitae reflects he has a masters degree in mechanical engineering from the University of California, Santa Barbara.  Broadhead states that he has lectured on seat belts and accident reconstruction and has authored numerous publication

reports.  See Broadhead Rule 26 Report; CV at pages 3-4.  Broadhead has studied seat belts for over 30 years and has headed up numerous research programs for the National Highway Traffic Safety Administration ("NHTSA").  Id.  Broadhead has also designed seat belt components under contracts with NHTSA.  See Broadhead Decla. ¶5.  Broadhead declares that his findings related to seat belt performance in rollover accidents have been published and presented at two conferences.  See Broadhead Decla. ¶3; CV at page 4.

Additionally, Broadhead details that he has analyzed occupant restraint performance in hundreds of real world car accidents.  See Broadhead Decla. ¶2.  Broadhead declares that he has testified as an expert in restraint systems dozens of times in 20 states, including state and federal courts.[4]  See Broadhead Decla. ¶2.  Accordingly, the court finds that Broadhead has sufficient "knowledge, skill, experience, training, or education" and overrules Defendants' objections regarding his qualifications.[5]

Lastly, Defendants contend that Broadhead is not qualified because he lacked specific knowledge of the issues in this case.  The court disagrees.  Broadhead declares that in forming his opinions, he relied on and reviewed the subject traffic collision report, depositions of fact witnesses and investigators, a first-hand inspection of the subject vehicle and its seat belts, photographs of the subject vehicle, various materials produced by Ford, the subject vehicle's CarFax Report, the NHTSA database, the 1998 Ford Explorer owner guide, and the decedents' autopsy reports.  See Broadhead Rule 26 Report at pages 2-3.  Accordingly, Defendants' contentions go to the weight accorded to Broadhead's testimony and not its admissibility.  See

---

[4] Additionally, the court takes judicial notice that on March 26, 2008, in a vehicle collision case, this court denied Defendant Takata Seat Belts Inc.'s motion to exclude Plaintiff's expert's (Broadhead) opinion that the seat belt web guides were defective.  Case No. CV F 06-1539 LJO-SMS.  Judge O'Neill reasoned that although there appeared to be a discrepancy in Broadhead's deposition testimony, the discrepancy provided grounds for vigorous cross-examination.  Judge O'Neill further noted that "ultimately it will be up to the trier of fact to make the finding of which opinion the expert has, whether it has merit, and whether the witness has credibility."

[5] Further, Broadhead declares that he has never been excluded from testifying as an expert on any basis.  See Broadhead Decla. ¶2.

United States v. Garcia, 7 F.3d 885, 889-90 (9th Cir. 1993); see also People v. Stuller, 10 Cal. App.3d 582, 597 (1970) (expert's degree of knowledge is a matter affecting weight of testimony, not its admissibility). Thus, Defendants' objections relating to Broadhead's degree of knowledge of the issues are overruled.

      B.    Broadhead's Methodology

      Defendants challenge Broadhead's opinions concerning the right front seat belt and right rear seat belt. For the right front seat belt, the methodology critique relates to the webbing and retractor. For the right rear seat belt, the methodology critique relates to the buckle.

      1.    Right Front Seat Belt Opinion

      Broadhead offers two opinions regarding the right front seat belt: (1) the seat belt was defective either because it broke even though the webbing was not subjected to G forces beyond its design tolerance (as set by federal motor vehicle safety standards requirements on seat belt strength) or because the retractor failed to lock during the rollover and improperly allowed excessive webbing to spool out, which in turn allowed a significant increase of the webbing lengths and excess G forces to be applied on the webbing. See Broadhead Decla. ¶16; and (2) the defective belt rendered Tia unrestrained and was the primary factor in causing Tia's death. See Broadhead Rule 26 report at page 19.

      a.    Seat Belt Defect Opinion

      i.    Webbing Defect

      Defendants contend that Broadhead's opinion that the webbing broke even though it was not exposed to G forces beyond its design tolerance is unreliable because: (1) it is based on his mere observation of the broken webbing and not on a valid methodology; (2) he did not collect sufficient facts or data; and (3) he didn't perform enough testing.

      The court disagrees. First, as the basis of his opinion, Broadhead states that he followed a fifteen page peer-reviewed vehicle inspection methodology. As part of the methodology, he observed and inspected magnified webbing fibers to determine whether the webbing broke as a

result of tensile forces.  <u>See</u> Broadhead Decla. ¶11.  Broadhead also measured the seat belt and compared photos of Tia's body with photos of the seat belt to determine at what length the seat belt failed.  <u>See</u> Broadhead Decla. ¶10.  Defendants provide no evidence that Broadhead's methodology was invalid.  Accordingly, the court finds that Broadhead employed sound methodology and overrules this objection.

Second, Broadhead opines that during the rollover, the webbing was not subjected to G forces that were beyond the design tolerance.  Broadhead declares that he formed his opinion based on an accident reconstruction, his 30 years of seat belt performance experience, including the review of hundreds of car accidents, his engineering background, and his knowledge of forces involved in rollover accidents.  Broadhead explains that federal motor vehicle safety standard 208 ("FMVSS 208") allows up to 60 G forces on the occupant's chest in frontal collisions before there is a significant risk of severe injury.  <u>See</u> Broadhead Rebuttal Report at page 4; Decla. ¶7.  Broadhead opines that it is rare to generate more than 10 G forces of vehicle acceleration during a rollover.  <u>See</u> Broadhead Decla. ¶7.  Broadhead states that lower G forces are placed on restraint systems during a rollover collision than a frontal collision because rollover collisions generate less acceleration than frontal collisions.  <u>See</u> Broadhead Rebuttal Report at page 4; Decla. ¶7.  Defendants' experts estimate that 23 G forces were sustained in the accident.[6]  Broadhead opines that assuming Defendants' estimate of 23 G forces, the seat belts would not have been subjected to forces at or approaching FMVSS 208 requirements of 60 G forces.  <u>See</u> Broadhead Rebuttal Report at page 5.

Defendants do not provide any evidence that Broadhead's opinion that the webbing was not subjected to G forces beyond its design tolerance was not based on valid reasoning and methodology.  Rather, it appears that Defendants' experts and Plaintiff's experts disagree as to the

---

[6]Broadhead disagrees with Defendants' seat belt expert's (Greg Miller) claim that 23 G forces were sustained in the accident.  Broadhead opines that 23 G forces are excessive and inaccurate because Greg Miller misapplied tensile force equations in rollover accidents.  <u>See</u> Broadhead Rebuttal Report at page 3.  Nevertheless, for purposes of Defendants' motion to exclude Broadhead, Broadhead accepts Greg Miller's 23 G force estimate.

amount of G forces sustained at the time of the webbing fiber separation. Analysis of the credibility and weight of the experts' conclusions should be reserved for the trier of fact. Accordingly, the court finds that Broadhead employed sound methodology regarding his opinion that the seat belt was defective because it broke even though it was not subjected to sufficient G forces and overrules Defendants' objections.

Finally, Defendants criticize Broadhead for not performing any calculations, surrogate testing, or testing of the subject seat belts. Broadhead explains that he did not conduct surrogate analysis because it was unnecessary to the formation of his opinions. <u>See</u> Plaintiff's Opp. at page 11. Broadhead declares that he did not test the actual seat belts because testing of the webbing and retractor would destroy the evidence. <u>See</u> Broadhead Decla. ¶17 & ¶22.

The court will not exclude Broadhead's testimony on the grounds that Broadhead should have conducted more testing. In most cases, objections to the inadequacies of a study are more appropriately considered objections going to the weight of the evidence rather than their admissibility. <u>U.S. Xpress, Inc. v. Great Northern Ins. Co.</u>, 2002 U.S. District Lexis 25379, *9 (D. Minn. Dec. 9, 2002). If Defendants wish to explore issues that Broadhead did not test for, such as why he did not test the actual seat belt components, these issues can be covered by cross-examination. Thus, Defendants' objections regarding additional testing are overruled.

ii.    <u>Retractor Defect</u>

Similar to the webbing opinion, Defendants contend that Broadhead's opinion that the retractor defectively failed to lock is based on an invalid methodology. Broadhead contends that he formed his retractor opinion by following the same 15 page peer-reviewed inspection methodology as he did with regard to his webbing opinion. Defendants, however, do not provide the court with any valid argument that Broadhead's inspection methodology was unsound or one not generally accepted in the relevant scientific community.

1    Broadhead relies on peer-reviewed literature[7] to support his opinion that retractors are

2    most prone to allowing excessive webbing to spool out (webbing payout) during a rollover

3    accident.  Broadhead also cites to peer-reviewed  literature to support his opinion that the

4    reproduction and prediction of a lock/release event is impossible and as such one must look to the

5    actual performance of the seat belt to determine if there is a spool out failure during the rollover.

6    Defendants challenge Broadhead's reliance on peer-reviewed literature on the grounds that the

7    articles are inadmissable hearsay.  The court disagrees as an expert may base his opinion on

8    inadmissable facts or data of a type reasonably relied upon by experts in his field.  See Fed. R.

9    Evid. 703; see Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 870 (9th Cir. 2001).

10   There is no showing in this record that reliance on professional literature is not the type of

11   material that a seat belt expert would rely upon in forming his opinions.

12    Defendants also contend that Broadhead should have conducted testing of the subject

13   retractor.  Broadhead declares that he did not test the retractor because it could not be removed

14   and tested without significantly degrading the condition of the physical evidence.  See Broadhead

15   Decla. ¶22.  As discussed above with respect to the webbing, if the Defendants wish to explore

16   why Broadhead did not test the subject retractor these issues can be covered by cross-

17   examination.  Accordingly, Defendants' objections are overruled.

18    Lastly, Defendants contend that Broadhead's testimony is unreliable because Broadhead

19   could not identify any defect that more probably than not caused the seat belt failure.  Defendants

20   rely on Gray v. General Motors Corp., 133 F. Supp. 2d 530 (E.D. Ky. 2001) for this proposition.

21   In Gray, however, the court did not address the issue of admissibility of expert testimony under

22   Daubert, but rather, addressed the sufficiency of evidence produced at trial in the context of a

23   motion for a judgment as a matter of law.  Therefore, Gray is not applicable to the court's Daubert

24   analysis.

25   _____

26        [7]"Dynamic Analysis of ELR Retractor Spoolout," Steven E. Meyer, et. al. and "Rollover
     Ejection While Wearing a Lap & Shoulder Harness: The Role of the Retractor," David A.
27   Renfroe.

28                                              15

1    Nevertheless, <u>Gray</u> is distinguishable because there the court criticized the seat belt expert

2  because he could not identify a probable cause of the seat belt defect.  The expert in <u>Gray</u> could

3  only outline numerous possible problems with the restraint system, which may have caused the

4  failure.  The instant matter is distinguishable because Broadhead declares that he examined and

5  tested all the plausible explanations for the seat belt failure.  Based on his examinations,

6  Broadhead concluded that the only two probable and plausible causes for the seat belt failure was

7  either a webbing defect or a retractor defect.  <u>See</u> Broadhead Decla. ¶13-¶16.  Broadhead further

8  declares that either of these two causes constitute a defect.  <u>Id.</u>  Unlike the <u>Gray</u> expert, Broadhead

9  was able to isolate the only probable causes and tilt the balance from possibility to probability.

10  Moreover, Defendants fail to show that examining, testing and then eliminating other plausible

11  causes to arrive at a probable and plausible cause is an invalid scientific methodology.  Thus, the

12  court overrules Defendants' objections.

13                            b.        <u>Causation Opinion</u>

14    Defendants challenge Broadhead's opinion that the webbing failure rendered Tia

15  unrestrained and caused her to be ejected and suffer fatal injuries.  Broadhead relies on a

16  publication report that states that occupants that are ejected during a crash are fifty-eight times

17  more likely to suffer fatal injuries than those that remain inside the car.  <u>See</u> Broadhead Rule 26

18  report at page 5.  Broadhead opines that if Tia had remained within the car's compartment, she

19  would have been expected to survive.  <u>See</u> Broadhead's Rule 26 report at page 19.  Moreover,

20  Broadhead notes that, out of the five occupants, the only surviving occupant was restrained by his

21  seat belt, remained inside the vehicle, and suffered relatively minor injuries.  Defendants do not

22  contend that Broadhead's reliance on the statistical studies is unreliable.  Instead Defendants

23  merely disagree as to whether Tia would have survived if she had remained in the vehicle.

24  Accordingly, the court finds Broadhead's testimony reliable as to causation and Defendants'

25

26

27

28                                                    16

objections are overruled.[8]

2. Right Rear Seat Belt Opinion

Broadhead offers three opinions regarding the right rear seat belt: (1) Keilan was wearing his seat belt; (2) the right rear buckle was defective because it would no longer hold the latch plate for which it was designed to hold under anticipated G forces. See Broadhead Decla. ¶19; and (3) the defective buckle rendered Keilan unrestrained and was the primary factor causing his death.

a. Seat Belt Usage Opinion

Broadhead opines that there is physical evidence on the seat belt components that are consistent with seat belt usage during the accident. See Broadhead's Rule 26 report at page 17. Broadhead declares that he used the same peer-reviewed methodology that he used on the right front seat belt to inspect the right rear seat belt. Defendants contend that Keilan was not wearing his seat belt during the accident and that damage to the buckle was not related to a failure during use. Defendants do not challenge Broadhead's methodology but rather disagree with his conclusion that Keilan was wearing his seat belt during the accident. The Daubert analysis focuses on the principles and methodology underlying an expert's testimony and not on his conclusions. Daubert, 509 U.S. at 595. Defendants' mere disagreement with Broadhead's conclusion is not a sufficient reason to exclude his opinion under Rule 702. Thus, Defendants' objections are overruled.

b. Buckle Defect Opinion

Defendants contend that Broadhead's opinion that the buckle was defective is unreliable because he merely observed the broken buckle and did not collect sufficient facts or data to

_____

[8]Defendants also contend that Broadhead's testimony will not assist the jury in understanding the evidence pursuant to Rule 403. Rule 403 allows the court to exclude relevant evidence if "its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The court has broad discretion in assessing admissibility under Rule 403. Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1124 (10th Cir. 1995). For the reasons described above, Defendants' objections are overruled as Broadhead's testimony will aid the jury in understanding the evidence and is not substantially outweighed by any of the countervailing factors set forth in Rule 403.

support his opinion. The court disagrees. Broadhead declares that he inspected the buckle using the same 15 page peer-reviewed inspection methodology as discussed above to determine whether the buckle was defective. See Broadhead Decla. ¶18. Broadhead declares that the buckle would no longer hold the latch plate for which it was designed to hold. See Broadhead Decla. ¶19. Broadhead noted that there was no evidence or testimony that the buckle was inoperable prior to the collision. Id.

Defendants also contend that Broadhead's opinion is unreliable because he did not test the subject buckle. Broadhead declares that it was not necessary to conduct testing of the subject buckle in forming his opinion. See Broadhead Decla. ¶19. Broadhead also declares that testing of the subject buckle would risk degradation of physical evidence. See Broadhead Decla. ¶19. In addition, Broadhead declares that he formed his opinion that the buckle failed during the rollover by testing a new, right rear replacement buckle and disassembling it and comparing it to the actual buckle in question. See Broadhead Decla. ¶18. Broadhead declares that the replacement buckle had slight visual differences from the subject buckle. Id.

The court will not exclude Broadhead's testimony on the grounds that he should have conducted more testing. In most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility. U.S. Xpress, 2002 U.S. District Lexis 25379 at *9. Thus, there is no basis to exclude Broadhead's testimony regarding the buckle defect. Vigorous cross-examination, presentation of contrary evidence and careful instructions on the burdens of proof will address Defendants' concerns regarding Broadhead's testimony.

c.    Causation Opinion

Defendants challenge Broadhead's opinion that the buckle failure rendered Keilan unrestrained and caused him to be ejected and suffer fatal injuries. For the same reasons as described above with respect to Tia, the court finds Broadhead's testimony reliable as to causation and Defendants' objections are overruled.

C.    <u>Evidentiary Objections to Broadhead's Declaration</u>

Defendants object to Broadhead's declaration in support of Plaintiff's opposition on the grounds that his December 1, 2008 declaration contradicts his prior testimony. For example, Defendants compare Broadhead's declaration where he states: "I did measure operational aspects of the seat belt and in fact, in my report (photograph #7) I show a critical measurement of the right front occupant's belt" (<u>See</u> Broadhead Decla. ¶10) with his deposition testimony where he states "[I] did not test the right front occupant's webbing material at all." <u>See</u> Broadhead Dep. 44:13-44:18. This alleged discrepancy on whether measuring constitutes testing does not appear to be wholly inconsistent testimony and does not provide grounds for striking Broadhead's declaration and instead provides grounds for vigorous cross-examination.

The general rule is that a "party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991). This rule, however, must be applied with caution. <u>Id.</u> at 266. To apply this general rule, "the district court must make a factual determination that the contradiction was actually a sham." <u>Id.</u> at 267. Testimony is a sham only if it flatly contradicts earlier testimony in an attempt to create an issue of fact to avoid summary judgment. <u>Id.</u> Thus, testimony is not a sham if it merely elaborates upon, explains or clarifies prior testimony. <u>Messick v. Horizon Indus., Inc.</u>, 62 F.3d 1227, 1231 (9th Cir. 1995). Broadhead's testimony does not appear to be flatly inconsistent testimony. Defendants cite further examples of alleged discrepancies between Broadhead's deposition testimony and his December 1, 2008 declaration. The court has reviewed Defendants' multiple examples and finds them to be similar to the "testing" versus "measuring" example. That is, these are areas for cross-examination and do not warrant exclusion.

Defendants object that Broadhead arrives at improper conclusions and that his declaration includes statements that lack foundation. The court denies these objections because the focus of the court's inquiry is not whether the expert's opinion has the best foundation or whether they are correct, but whether the opinions are based on sufficient reasoning and methodology. <u>See</u> <u>Getter</u>,

19

66 F.3d at 1124 (<u>Daubert</u> doesn't require court to admit or exclude based on its persuasiveness). Defendants' objections that Broadhead's declaration contains statements that are vague and ambiguous, irrelevant, insufficient under the best evidence rule, and include improper arguments have been reviewed and are denied.

Defendants' object that Broadhead's reliance on peer-reviewed articles is improper because the articles are inadmissable hearsay. This objection is denied and has been addressed above. Lastly, Defendants' objections based on lack of expert qualifications pursuant to Rule 702 have been addressed above as well.

## IV.    Resolution Regarding the Admissibility of Hayes's Expert Testimony

### A.    Hayes's Qualifications

Defendants claim that Hayes lacks the qualifications of an expert who can opine on accident reconstruction because he does not teach accident reconstruction of rollovers, has never performed a full-scale crash test of an automobile, and has never performed peer-reviewed, published research relating to rollover accidents or been licensed as an engineer.  The court does not agree that Hayes lacks the requisite credentials to testify about biomechanics injury causation and accident reconstruction.

Hayes's curriculum vitae reflects that he has a masters in mechanical engineering from Stanford University, and a Ph.D. in Theoretical and Applied Mechanics from Northwestern University, where his course work included advanced training in engineering dynamics and kinematics, and anatomy, physiology and biomechanics.  For over forty years, Hayes has taught medical students, engineers, forensic scientists, and accident reconstructionists, graduate and post graduate courses on the subject of injury biomechanics.  Hayes is currently a professor of Mechanical Engineering at Oregon State University.  Hayes has served as a professor of biomechanics at Harvard Medical School and as a professor of mechanical engineering and surgery orthopaedics at Stanford University.  At Stanford University, Hayes established a crash test facility that was used to study occupant dynamics and injuries.  Hayes details that he has

authored numerous peer-reviewed publications, reports, books and lectures on biomechanics, injury causation and accident reconstruction, including rollover accident reconstruction. See Hayes CV at page 18 . Hayes is also the founding editor of the Journal of Orthopaedic Research. Hayes declares that he has testified as an expert on accident reconstruction, occupant dynamics and injury biomechanics on 74 occasions and on 100 occasions with respect to medical causation in state and federal courts.[9] See Plaintiff's Opp. at page 13. Given Hayes's forty years of biomechanical injury and accident reconstruction research and teaching experience, the court finds that Hayes is qualified to testify about biomechanics injury causation and accident reconstruction.

Additionally, Defendants argue that Hayes is not qualified to testify about injury causation because he is not a medical doctor. The court is not persuaded given that Defendants cite no legal authority for their proposition that only medical doctors are qualified to provide opinions on injury causation and biomechanics.

Lastly, Defendants contend that Hayes is not qualified because he relied on the assistance of an engineer from his office who helped prepare the accident reconstruction. The court disagrees as the Federal Rules of Evidence specifically provide that an expert may rely on facts or data "perceived by or made known to the expert at or before the hearing." Fed. R. Evid. 703.

Accordingly, the court finds that Hayes has sufficient "knowledge, skill, experience, training, or education" and overrules Defendants' objections regarding his qualifications.

      B.    Hayes's Accident Reconstruction Opinion[10]

---

[9] Defendants also contend that Hayes is unqualified to testify in this case because he has been twice excluded from providing expert testimony in Maricopa County, Arizona and Cameron County, Texas. The Maricopa County state court order reveals that Hayes was allowed to testify as to his biomechanics opinion but was prohibited from expressing "medical opinions." It appears that his medical opinion was excluded because it was duplicative of other medical experts. The Cameron County state court order does not indicate whether that case presented similar facts to those present in the instant matter, and therefore is not instructive in this matter. Thus, Defendants' objections relating to Hayes's previous disqualifications are overruled.

[10] Hayes was retained to evaluate the evidence in this case and perform an accident reconstruction to determine: (1) the speed of the vehicle prior to the loss of control; (2) the speed of the vehicle at the time of the rollover trip; (3) the vehicle kinematics during the rollover event; (4) the occupant kinematics of Tia and Keilan Santos during the rollover event; and (5) whether

Defendants contend that Hayes's accident reconstruction opinions are unreliable because Hayes did not personally inspect the subject vehicle and because he did not personally examine the accident scene. This court disagrees with Defendants' arguments as they fail to challenge Hayes's methodology. In his Rule 26 report, Hayes outlines the peer-reviewed accident reconstruction methodology that he followed in forming his opinion. See Hayes Decla. ¶17, ¶¶25-26. Hayes declares that he followed a peer-reviewed methodology to determine the vehicle's speed at the point of initiation of the rollover event, the speed of the vehicle at the point of loss of control, and the approximate number of rolls in the rollover event. Id. Hayes also declares that the methodologies he employed are universally accepted in the accident reconstruction community, are published, have been subjected to peer-review, and have known and acceptable error rates. See Hayes Decla. ¶26.

Defendants also argue that his opinions are unreliable because he could have collected more facts or data to support his opinions. However, Hayes declares that prior to performing his analysis, he reviewed the traffic collision report, the coroner's reports, interviews and depositions of fact witnesses and investigators, photographs of the accident scene and the subject vehicle, rollover research literature, debris evidence documentation, and measurements taken by investigating officers. See Hayes Decla. ¶26. Also, although Hayes did not personally inspect the subject vehicle, Hayes's engineering associate did conduct a personal inspection of the vehicle. As described above, Hayes's reliance on his engineering associate's work does not invalidate Hayes's opinions.

Accordingly, the court finds that Hayes employed a reliable peer-reviewed methodology and overrules Defendants' objections with respect to Hayes's methodology.

C.    Hayes's Biomechanics Injury Causation Opinion

Defendants argue that Hayes's biomechanical injury causation opinions are unreliable

---

Tia and Keilan would have sustained fatal head, neck, and chest injuries had their seat belts not failed to restrain them inside the vehicle. See Hayes Rule 26 report.

because Hayes did not collect sufficient facts and because he did not conduct a surrogate study. This court is not persuaded. In his Rule 26 report and rebuttal report, Hayes describes the peer-reviewed biomechanical injury methodology that he followed in forming his opinion that seat belt failure dramatically increases the likelihood of severe injury or death. Hayes relies on epidemiological research that indicates that ejected occupants are 6.2 times more likely to sustain a fatal injury in a rollover collision than unrestrained occupants. Hayes further relies on peer-reviewed studies that corroborate these statistics.

Defendants also criticize Hayes for not calculating the G forces that were placed on the occupants' seat belts during the accident in his initial Rule 26 report. The court will not exclude Hayes's testimony since Dr. Hayes provides his methodology and conclusion regarding the G forces that were placed on Tia's seat belt in his rebuttal report.

Accordingly, the court finds that Hayes utilized a reliable methodology and overrules Defendants' objections with respect to Hayes's biomechanical injury causation methodology.

D.    Evidentiary Objections to Hayes's Declaration

Defendants object to Hayes's Declaration in support of Plaintiff's opposition on the grounds that his December 1, 2008 Declaration contradicts prior testimony. The court has reviewed Defendants' multiple examples of alleged discrepancies and does not find them to be wholly inconsistent testimony. Testimony is a sham only if it flatly contradicts earlier testimony in an attempt to create an issue of fact to avoid summary judgment. Kennedy, 952 F.2d at 267. Therefore, Defendants' examples do not provide grounds for striking Hayes's Declaration but rather provides grounds for vigorous cross-examination.

Defendants object that Hayes arrives at improper conclusions and that his Declaration includes statements that lack foundation. The court denies Defendants' objections on these grounds because the focus of the court's inquiry is not whether the expert's opinion has the best foundation or whether they are correct, but whether the opinions are based on valid reasoning and methodology. See Getter, 66 F.3d at 1124 (Daubert doesn't require court to admit or exclude

23

based on its persuasiveness).  Defendants' objections that Hayes's Declaration contains statements that are vague and ambiguous, irrelevant, insufficient under the best evidence rule, lack of personal knowledge and include improper arguments have been reviewed and are denied.  Lastly, Defendants' objections based on lack of expert qualifications pursuant to Rule 702 have been addressed above.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.     Undisputed Material Facts

_____Both parties in this case submitted a separate statement of undisputed material facts ("SUF").  After examining the record, the court has determined that the relevant undisputed material facts are as follows:

1.    TRW AH, TRW AI nor TRW AU were not responsible in any way for the right rear seat belt assemblies, or any components thereof, installed in the 1998 Ford Explorer.

2.    Plaintiff has produced no evidence of a probable design defect in the right front seat belt webbing.

3.    Plaintiff did not purchase the subject vehicle or any components from TRW VSSI.

### II.    Claims Against TRW AH, TRW AU, and TRW AI

In order to bring a valid products liability claim, Plaintiff must prove that the Defendants produced, manufactured, sold, or were in some way responsible for the product.  DiCola v. White Bros. Performance Products, Inc., 158 Cal. App. 4th 666, 677 (2008).  Defendants contend that TRW AH, TRW AU, and TRW AI did not design, test, manufacture, distribute, sell, or play any role in the design or manufacture of any seat belt assemblies or components.  See Jeffrey A. Jenkins Decla. ¶4; SUF in Support of Motion ¶1.  Plaintiff responds that she has no information with which to dispute this statement.  Plaintiff admits that she does not possess any evidence linking TRW AH, TRW AU, and TRW AI to the seat belts and does not oppose the dismissal of

24

TRW AH, TRW AU, and TRW AI. <u>See</u> Plaintiff's Opposition at page 6.

Therefore, summary judgment is granted as to all claims against Defendants TRW AH, TRW AU, and TRW AI.

**III.   Claims Against TRW VSSI**

A.   <u>First Cause of Action-Strict Products Liability</u>

A manufacturer is strictly liable for injuries resulting from the use of its product if the product was defectively designed, defectively manufactured, or distributed without adequate warnings. <u>Arnold v. Dow Chemical Co.</u>, 91Cal. App. 4th 698, 715 (2001). Here, Plaintiff asserts that TRW VSSI's right front and left rear seat belts were defectively designed, contained various manufacturing defects, and did not contain adequate warnings.

1.   <u>Plaintiff has Raised a Triable Issue of Fact Regarding her Design Defect Claim</u>

a. <u>Right Rear Seat Belt Buckle and Right Front Seat Belt Retractor</u>

Defendants argue that Plaintiff cannot establish the existence of any probable seat belt defect or injury causation. Plaintiff contends that the right front seat belt retractor and right rear seat belt buckle were defectively designed. To prevail in a design defect cause of action on a theory of strict liability under the risk-benefit test,[11] a plaintiff has to present evidence that her injury was proximately caused by the product's design. <u>Barker v. Lull Engineering Co.</u>, 20 Cal. 3d 413, 429 (1978); <u>Moreno v. Fey Manufacturing Corp.</u>, 149 Cal. App. 3d 23, 27 (1983). In the instant matter, each party presented conflicting expert testimony on the issue of causation as described more fully in the court's <u>Daubert</u> analysis. The court found that Plaintiff's experts' opinions on the issue of causation were admissible. Proximate cause may be decided as a matter of law if the facts are undisputed and there is only one reasonable inference that can be drawn from them. <u>Bigbee v. Pacific Tel. & Tel. Co.</u>, 34 Cal.3d 49, 56 (1983). Here, the parties' experts dispute whether the alleged seat belt defects caused Plaintiff's injury. This presents the court with

---

[11]Plaintiff and TRW VSSI agree that the risk-benefit test applies as opposed to the consumer expectation test.

a disputed issue of material fact.  A jury could consider the parties' competing evidence and reasonably conclude that the seat belt's design caused the Plaintiff's injury.  Therefore, Plaintiff has made her prima facie case of proximate causation.

TRW VSSI attempts to impose upon Plaintiff an obligation to prove the presence of a defect.  California law states the contrary.  Once Plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden shifts to the Defendant to prove that the design was not defective.  Barker, 20 Cal. 3d at 431; Moreno, 149 Cal. App. 3d at 27.  Therefore, TRW VSSI needs to prove that the benefits of the design outweigh the risks of the design.  Id.  When making this determination, the jury may consider many factors, including: (a) the gravity of the potential harm resulting from the use of the product; (b) the likelihood that this harm would occur; (c) the feasibility of an alternative safer design at the time of manufacture; (d) the cost of an alternative design; and (e) the disadvantages of an alternative design.  Gonzalez v. Autoliv ASP, Inc., 154 Cal. App. 4th 780, 786-87 (2007).  TRW VSSI offered no evidence that the benefits of the design outweighed its inherent risks.  The court finds that TRW VSSI has failed to meet its burden to prove, as a matter of law, that the benefits of the seat belt design outweigh its risks.  Accordingly, a triable issue exists for the jury to determine whether the risks of the seat belt design outweigh its benefits.

TRW VSSI contends in a footnote that it is insulated from Plaintiff's allegations of a design defect under the component supplier doctrine.  TRW VSSI relies on Wiler v. Firestone Tire & Rubber Co. for its position.  95 Cal. App. 3d 621, 629 (1979).  TRW VSSI's reliance on Wiler is misplaced, however, because Wiler held "[a] component part manufacturer may be held liable for damages caused by a component part which was defective at the time it left the component part manufacturer's factory."  Wiler, 95 Cal. App. 3d at 629; see also Gonzalez, 54 Cal. App. 4th at 789-90.  The component manufacturer defense requires a showing that the component part standing along is not defective.  Gonzalez, 54 Cal. App. 4th at 788.  Here, TRW VSSI has not shown that there was no defect in the component part.  Accordingly, TRW VSSI  is

26

not relieved from liability as the alleged defect is in the component part.

Lastly, TRW VSSI asserts that Plaintiff must prove the existence of a feasible alternative design. California law does not support TRW VSSI 's position. See Bernal v. Richard Wolf Medical Instruments Corp., 221 Cal. App. 3d 1326, 1335 (1990) (Plaintiff does not have to prove the existence of a feasible alternative design); see also Gonzalez, 54 Cal. App. 4th at 791 (same). The court is unpersuaded by TRW VSSI's reliance on Baker v. Chrysler Corp., 55 Cal. App. 3d 710, 716 (1976) and Gray, 133 F. Supp. 2d 530 (E.D. Ky. 2001). First, Baker was overruled by the California Supreme Court in Barker v. Lull Engineering, which explicitly states that a plaintiff does not have to prove an alternative design. Second, Gray is not applicable as it applies Kentucky law.

Accordingly, the court denies Defendant's summary judgment as to Plaintiff's design defect claims regarding the right rear seat belt buckle and right front seat belt retractor.

b.    Right Front Seat Belt Webbing

Plaintiff has abandoned her design defect claim with respect to the right front seat belt webbing when she admits " Plaintiff has produced no evidence of a probable design defect with respect to the right front seat belt webbing." See Plaintiff's SUF ¶5.

Accordingly, the court grants Defendant's summary judgment as to Plaintiff's right front seat belt webbing design defect claim.

2.    Plaintiff has Raised a Triable Issue of Fact regarding her Manufacturing Defect Claims

Plaintiff contends that the right front seat belt retractor and webbing and right rear seat belt buckle contain manufacturing defects. TRW VSSI contends that Plaintiff fails to establish the existence of any probable defects in the right rear or right front seat belts. To establish a manufacturing defect claim, a plaintiff must prove that the defendant manufactured the product, the product contained a manufacturing defect when it left the defendant's possession, that the product was used in a way that was reasonably foreseeable to the defendant, that the plaintiff was harmed and that the product's defect was a substantial factor in causing the plaintiff's harm.

Stephen v. Ford Motor Co., 134 Cal. App. 4th 1363, 1367-71 (2005).  The Supreme Court has defined a manufacturing defect as one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line.  Barker, 20 Cal.3d at 429.

Here it is undisputed that TRW VSSI manufactured the seat belts.  See Defendant's SUF ¶5.  The Defendant does not argue that the seat belt was used in a way that was not reasonably foreseeable to the Defendant or that the Plaintiff was not harmed.  The parties dispute whether the seat belts contained a manufacturing defect and whether the product's defect was a substantial factor in causing Plaintiff's harm.

### a.  Right Front Seat Belt

As described in the court's Daubert analysis, Plaintiff's experts essentially opine that the right front seat belt is defective either because the webbing itself contained a manufacturing defect or because the retractor contained a manufacturing defect.  Plaintiff's experts opine that the webbing contained a manufacturing defect because it broke even though the webbing was not subjected to G forces beyond its design tolerance (as set by federal motor vehicle safety standards requirements on seat belt strength).  See Broadhead Rule 26 Report at page 11; Hayes Decl. ¶35; Hayes Rebuttal Report ¶¶8-15.  Broadhead opines that the retractor contained a manufacturing defect because the retractor failed to lock during the rollover and improperly allowed excessive webbing to spool out, which in turn allowed a significant increase of the webbing lengths and excess G forces to be applied on the webbing.  See Broadhead Decla. ¶¶13-16; Broadhead Rebuttal Report at pages 3-4.

TRW VSSI essentially contends that Plaintiff fails to establish the existence of any probable defects in the right front seat belt because Plaintiff's experts testify in terms of possibility and not probability.  In the court's Daubert analysis, the court addressed each of TRW VSSI's arguments, including the possibility versus probability argument and rejected them.  Plaintiff and TRW VSSI each presented conflicting expert testimony on the issue of whether a

product defect was present in the seat belts and as to the issue of causation.[12]  Because the court

found that Plaintiff's experts' opinions on the issue of product defect were admissible, the court is

presented with a disputed issue of material fact.  A jury could consider the parties' competing

evidence and reasonably conclude that the right front seat belt contained manufacturing defects.

The determination of the credibility and weight of the expert's conclusions should be reserved for

the trier of fact.  In such a situation, summary judgment is not appropriate.

Accordingly, the court denies summary judgment as to Plaintiff's right front webbing

manufacturing defect claim.[13]

b.     Right Rear Seat Belt

Plaintiff's expert opines that Keilan was wearing his seat belt.  See Broadhead Decla. ¶19.

TRW VSSI's experts dispute whether Keilan was wearing his seatbelt.  However, Plaintiff's

expert opined that the seat belt showed signs of usage.  See Broadhead's Rule 26 report at page

17.  Additionally, both of Keilan's parents testified that Keilan always wore his seat belt.  See

Robert Santos Dep. at 12:14-20; 35:14-16; 38:8-23; Tracy Santos Dep. at 16:14-24; 17:15-17;

44:5-8.  As such, the court is presented with a disputed issue of material fact regarding whether

Keilan was wearing his seatbelt, which is an issue reserved for the trier of fact.

Plaintiff's expert also opined that the right rear buckle was defective because it would no

longer hold the latch plate for which it was designed to hold under anticipated G forces.  See

Broadhead Decla. ¶19.  TRW VSSI essentially contends that Plaintiff fails to establish the

existence of any probable defects in the right rear seat belt because Plaintiff's expert's opinion is

based on the mere observation of the broken buckle.  In the court's Daubert analysis, the court has

addressed each of TRW VSSI 's arguments and rejected them.  Plaintiff and TRW VSSI each

presented conflicting expert testimony on the issue of whether a product defect was present in the

---

[12] The court discusses the issue of causation more fully below.

[13]  The court does not intend to imply that Plaintiff will be meritorious in this action.
Rather, the state of the evidence demonstrates that a fact finder could reasonably conclude that a
manufacturing defect existed in the seat belts.

seat belt. This presents the court with a disputed issue of material fact regarding whether a defect exists.

As such, summary judgment is not appropriate. Accordingly, the court denies summary judgment as to Plaintiff's right rear seat belt manufacturing defect claim.

### 3. Injury Causation as to Tia and Keilan

Plaintiff's experts opine that the failure of the seat belts to restrain Tia and Keilan was a substantial factor in causing their death. "[A] tort is a legal cause of injury only when it is a substantial factor in producing the injury." <u>Soule v. GM Corp.</u>, 8 Cal 4th 548, 580 (1994). "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm." <u>Raven H. v. Gamette</u>, 157 Cal. App. 4th 1017, 1025 (2007) (quoting Judicial Council of California Civil Jury Instructions No. 430).

TRW VSSI contends that the severity of the rollover superseded any purported seat belt defect as the cause of Plaintiff's damages. TRW VSSI is correct that "if the violence of a crash is the efficient cause of plaintiff's injuries to the extent that it supersedes other factors, such as defective design and makes them immaterial, plaintiff cannot recover." <u>Endicott v. Nissan Motor Corp.</u>, 73 Cal. App.3d 917, 926-27 (1977). Plaintiff's experts, however, opined that if Tia and Keilan had remained restrained by their seat belts within the car's compartment, they would not have received fatal injuries. <u>See</u> Broadhead's Rule 26 report at page 19. Plaintiff's experts also provided statistical evidence that indicated that ejected occupants are 6.2 times more likely to sustain a fatal injury in a rollover collision than unrestrained occupants. <u>See</u> Hayes Rule 26 Report and Rebuttal Report.

Additionally, Plaintiff in her opposition contends that significant differences exist between the parties as to the severity of the accident, including the number of rolls experienced by the vehicle. Thus, a factual dispute exists regarding the severity of the accident and whether the alleged seat belt defects caused Plaintiff's injury. Whether a defendant's conduct actually caused an injury is a question of fact that is ordinarily for the jury." <u>Raven</u>, 157 Cal. App. 4th at 1029.

30

Accordingly, the court denies summary judgment as to Plaintiff's manufacturing defect claims.

B.     Second Cause of Action-Negligence

TRW VSSI is challenging Plaintiff's negligence claim based on the same strict liability arguments that have been rejected by the court.  In order to prevail on a negligence claim, Plaintiff must show that Defendant owed her a legal duty, breached that duty and that the breach was a proximate or legal cause to her injury.  Merrill v. Navegar, Inc., 26 Cal. 4th 465, 477 (2001).  In the context of a products liability lawsuit, "[u]nder a negligence theory, a plaintiff must also prove 'an additional element, namely that the defect in the product was due to negligence of the defendant.'"  Id. at 479.  For the same reasons as discussed above, the court finds TRW VSSI's arguments unavailing and finds that a jury could reasonably conclude that a product defect existed and was a substantial factor in Tia's and Keilan's deaths.

Accordingly, the court denies summary judgment as to Plaintiff's negligence claim.

C.     Third Cause of Action-Breach of Duty to Warn

TRW VSSI argues that it had no duty to warn as a component part supplier.  Plaintiff contends that TRW VSSI has a duty to warn users of the inherent dangers in their product, namely the lack of crash worthiness of the seat belts.

"[A] manufacturer owes a foreseeable user of its product a duty to warn of risk of using the product."  Powell v. Standard Brands, 166 Cal. App. 3d 357, 362 (1985).  The failure to warn may constitute a design defect.  Wright v. Stang Manufacturing Co., 54 Cal. App. 4th 1218, 1230 (1997); Gonzalez, 154 Cal. App. 4th at 786-87.  Plaintiff must prove that the Defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution."  Anderson v. Owens-Corning Fiberglass Corp., 53 Cal.3d 987, 1002-03 (1991).

Under the component parts doctrine, a manufacturer of a product component is not liable for injuries caused by the finished product into which the component is incorporated *unless* the

31

component itself was defective at the time it left the manufacturer. <u>Jimenez v. Superior Court</u>, 29 Cal. 4th 473, 480 (2002) (emphasis added). In <u>Jimenez</u>, the court rejected the manufacturer's component parts defense and reasoned that "the policies underlying strict products liability in tort . . . are equally applicable to component manufacturers and suppliers." <u>Id.</u> at 479-80. The court held that a manufacturer of component parts that were installed in homes could be subject to failure to warn liability. <u>Id.</u> at 480. In the instant matter, Plaintiff is alleging that the Defendant's seat belt itself was defective when it left the manufacturer's factory. Additionally, the court has found that a triable issue exists as to presence of a defect. As such, the component part doctrine does not shield TRW VSSI from liability.

TRW VSSI also argues that it is immune from liability because the seat belts it supplied were integrated into the vehicle by Ford, a sophisticated buyer. The court disagrees. A component manufacturer can be held strictly liable even if it did not assemble or integrate the component parts into the final product. As stated in <u>Jimenez</u>, "The issue is not whether the product was sold fully assembled or in parts, but rather whether the defect that resulted in the alleged damage existed when the [product] left the manufacturer's control." <u>Id.</u> at 480. Again here the Plaintiff alleges that a defect in the Defendant's product itself caused the harm.

Defendant relies on <u>Artiglio v. General Electric Co.</u> to support its position. 61 Cal. App. 4th 830, 839 (1998). <u>Artiglio</u>, however, is distinguishable because there the court held that a manufacturer of raw silicone used by breast implant manufacturers had no duty to warn breast implant recipients of the potential hazards where the silicone materials were substantially changed during the manufacturing process. 61 Cal. App. 4th at 839. In <u>Artiglio</u>, the raw silicone manufacturer had a limited role in developing and designing the end product as the silicone was used in a wide variety of products and not just breast implants. In <u>Artiglio</u>, the implant manufacturer had to cook the silicone into gel and silicone shells, inject the gel into shells, and package the implants. The <u>Artiglio</u> court stated, "these substantial manufacturing and marketing processes, over which [the silicone manufacturer] had no control, would plainly diminish the utility of any warning [the silicone manufacturer] might attempt to provide consumers." <u>Id.</u> at

840.

In the instant case, TRW VSSI did not supply a raw material, such as silicone. Rather, TRW VSSI manufactured and distributed seat belts for the purpose of providing car manufacturers with occupant restraint systems. Moreover, unlike Artiglio, Ford did not substantially alter the seat belts into a completely different finished product, over which the Defendant had no control. Thus, TRW VSSI is not relieved of liability by virtue of the fact that Ford installed the Defendant's seat belts in the vehicle.

Accordingly, the court denies summary judgment as to Plaintiff's failure to warn claim.

D.    Fourth Cause of Action-Breach of Warranty

Defendant argues that Plaintiff's breach of warranty claim fails because privity of contract is required between Plaintiff and TRW VSSI. Plaintiff argues that TRW VSSI expressly and impliedly warranted the subject vehicle to be free from defects and that privity of contract is not required under the facts of this case.

The "general rule is that privity of contract is required in an action for breach of either express or implied warranty." See Blanco v. Baxter Healthcare Corp., 158 Cal. App. 4th 1039, 1058-59 (2008) (quoting All West Electronics v. M-B-W, 64 Cal. App. 4th 717, 724 (1998)); see Burr v. Sherwin Williams Co., 42 Cal.2d 682, 695 (1954). Specifically, a plaintiff alleging breach of warranty claims must stand in "vertical privity" with the defendant. See Kennedy v. Baxter Healthcare Corp., 43 Cal. App. 4th 799, 810-11 (1996); Osborne v. Subaru of America, Inc., 198 Cal. App. 3d 646, 656 (1988). Vertical privity means that the plaintiff and the defendant must "occupy adjoining links in the distribution chain." Kennedy, 43 Cal. App. 4th at 810-11; Osborne, 198 Cal. App. 3d at 656 n.6. "For example, the distributor is normally in vertical privity with the manufacturer, and the ultimate retail buyer is normally in vertical privity with the dealer. But if the retail buyer seeks warranty recovery against a manufacturer with whom he has no direct contractual nexus, the manufacturer would seek insulation via the vertical privity defense." Osborne, 198 Cal. App. 3d at 656 n.6. Nevertheless, there are exceptions to the privity requirement such as reliance on the manufacturer's written representations in labels or advertising

materials.  See Fieldstone Co. v. Briggs Plumbing Products, Inc., 54 Cal. App. 4th 357, 369 n.10 (1997).

Here, it is undisputed that Plaintiff did not purchase the seat belts directly from TRW VSSI nor did she purchase her vehicle from Defendant.  Thus, the chain of distribution was Defendant to Ford, Ford to car dealer and car dealer to Plaintiff.  Plaintiff and Defendant do not occupy adjoining links in this chain as they are separated by at least two links.  See Kennedy, 43 Cal. App. 4th at 810-11; Osborne, 198 Cal. App. 3d at 656 n.6.  Accordingly, there appears to be insufficient privity for Plaintiff's warranty claims.

Plaintiff relies on Willaims v. Volkswagenwerk Aktiegesellschaft, 180 Cal. App. 3d 1244, 1267 (1986) and Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57 (1963) for the proposition that privity is not required in a products liability action where the action is based in tort and not in contract.  Williams and Greenman however, are based on the narrow exception identified in Fieldstone, where the plaintiff suffered damages from the use of a product marketed by the defendant.  See Williams, 180 Cal. App. 3d at 1267; Greenman, 59 Cal. 2d at 61.  Unlike Williams and Greenman, Plaintiff does not allege that TRW VSSI marketed the seat belts.[14]

Accordingly, summary judgment is granted as to Plaintiff's breach of warranty claims.

## ORDER

Based on the above memorandum opinion, the court ORDERS that:

1.      Defendants' motions to exclude the testimony of Plaintiff's experts Broadhead and Hayes are DENIED.

2.      Defendants' evidentiary objections to Broadhead's and Hayes's declarations are DENIED.

3.      Defendants TRW AH, TRW AU, and TRW AI's motion for summary judgment on Plaintiff's first, second, third, and fourth causes of action is GRANTED and

---

[14]Plaintiff also relies on Elmore v. American Motors Corp., 70 Cal. 2d 578 (1969). However, Elmore's holding is in the context of a strict liability claim where privity is not a requirement.  As the discussion in Elmore does not involve warranties, it is inapposite.

Plaintiff's first, second third, and fourth causes of action against Defendants TRW AH, TRW AU, and TRW AI are dismissed with prejudice.

4. Defendant TRW VSSI's motion for summary judgment on Plaintiff's first cause of action, strict liability-design defect regarding the right rear seat belt buckle and right front seat belt retractor, is DENIED.

5. Defendant TRW VSSI's motion for summary judgment on Plaintiff's first cause of action, strict liability-right front webbing design defect claim is GRANTED.

6. Defendant TRW VSSI's motion for summary judgment on Plaintiff's first cause of action, strict liability- right front webbing manufacturing defect claim is DENIED.

7. Defendant TRW VSSI's motion for summary judgment on Plaintiff's first cause of action, strict liability-right rear seat belt manufacturing defect claim is DENIED.

8. Defendant TRW VSSI's motion for summary judgment on Plaintiff's second cause of action, negligence, is DENIED

9. Defendant TRW VSSI's motion for summary judgment on Plaintiff's third cause of action, failure to warn, is DENIED.

10. Defendant TRW VSSI's motion for summary judgment on Plaintiff's fourth cause of action, breach of warranty, is GRANTED.

IT IS SO ORDERED.

Dated:    **May 13, 2009**                              **/s/ Anthony W. Ishii**
                                          CHIEF UNITED STATES DISTRICT JUDGE