1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT FOR THE
9              EASTERN DISTRICT OF CALIFORNIA
10

11  TRACY YU-SANTOS                          )   Case No.:   1:06-cv-01773-OWW-DLB
                                             )
12                     Plaintiff,            )   Judge Assigned:  Hon. Oliver W. Wanger
                                             )
13          v.                               )   **AMENDED FINAL PRETRIAL ORDER**
                                             )
14  TRW VEHICLE SAFETY SYSTEMS INC. and      )
    ROBERT SANTOS,                           )   <u>Trial Date</u>:  June 16, 2010
15                                           )   Time:       8:30 a.m.
                       Defendants.           )   Venue:      Courtroom 3
16                                           )
17  _____     )

18          This action is proceeding to trial between Plaintiff Tracy Yu-Santos ("Plaintiff") and Defendant

19  TRW Vehicle Safety Systems, Inc. ("Defendant") on the following issues:

20          (1)      Manufacturing defects as to the right front seat belt, left rear seat belt, and right rear seat belt;

21          (2)      Negligent Products Liability; and

22          (3)      Failure to warn (whether Defendant failed to adequately warn of any known or

23  knowable risk relating to the right front, left rear, and right rear seating positions).

24          The pretrial conference was held on February 26, 2010.  Pursuant to the parties' stipulation, the

25  original trial date of April 20, 2010 was vacated.  The trial in this matter was reset for June 2, 2010, at 8:30

26  a.m.  The parties currently estimate that the trial shall take 15 days.

27      **I.      <u>Jurisdiction and Venue</u>**

28          This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332

-1-
**AMENDED PRETRIAL ORDER**

because diversity jurisdiction exists in that there is complete diversity of citizenship between the parties and the amount in controversy is alleged to exceed $75,000.00.

The United States District Court for the Eastern District of California, Fresno Division is the appropriate venue for this action, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions on which Plaintiff's claims are based occurred in Fresno County within the Eastern District of California.

There is no dispute concerning jurisdiction or venue.

**II.     Jury Trial**

Plaintiff demanded a jury trial on all issues in her operative First Amended Complaint filed on December 19, 2006.  Defendant does not contest Plaintiff's demand for a jury trial.

**III.     Facts**

A.     Undisputed Facts

1.     Defendant was not in any way responsible for the roof structure of the 1998 Ford Explorer identified in Plaintiff's operative First Amended Complaint (the "Ford Explorer").

2.     Defendant was not in any way responsible for the window glazing of the Ford Explorer.

3.     Defendant was not in any way responsible for the doors or door latches of the Ford Explorer.

4.     The total distance the Ford Explorer traveled during the roll sequence was 310 feet in the dirt shoulder.

5.     Christopher Miranda was the driver of the Ford Explorer at the time of the accident.

6.     During the accident, both of the Ford Explorer's right passenger doors opened and were crushed outward.  The rear cargo door of the Ford Explorer also opened during the accident.

7.     Plaintiff does not contend that the right front passenger seat belt assembly of the Ford Explorer presents a design defect that proximately caused damages to Plaintiff.

8.     Plaintiff does not contend that the right rear passenger seat belt assembly of the Ford Explorer presents a design defect that proximately caused damages to Plaintiff.

9.     Tia Santos and Keilan Santos were the natural born children of Plaintiff and Robert Santos.

///

///

**AMENDED PRETRIAL ORDER**

B. <u>Disputed Facts</u>

1.      Aside from the following disputed factual issues set forth in 1(a)-(b) below, Plaintiff presents no other claim of defect against Defendant in this action:

     a.      The parties dispute whether a manufacturing defect exists in the right rear seat belt buckle of the Ford Explorer that proximately caused damages to Plaintiff.

     b.      The parties dispute whether a manufacturing defect exists in the right front seat belt webbing of the Ford Explorer that proximately caused damages to Plaintiff.

     c.      The parties dispute whether a manufacturing defect exists in the left rear seat belt webbing of the Ford Explorer that proximately caused damages to Plaintiff.

2.      The parties dispute the accident reconstruction of the rollover, including but not limited to the number of times the Ford Explorer rolled, the average distance of each roll revolution, the speed of travel of the Ford Explorer prior to the accident, the Ford Explorer's trip speed, and the average deceleration rates, average roll rates and peak roll rates during the rollover sequence.

3.      The parties dispute whether Keilan Santos was seated in the left rear or right rear seat.

4.      The parties dispute the type of injuries Tia Santos would have sustained if the webbing in the right front seat belt assembly of the Ford Explorer did not separate.

5.      The parties dispute the type of injuries Keilan Santos would have sustained if the webbing in the left rear seat belt assembly of the Ford Explorer did not separate.

6.      The parties dispute whether, if Keilan Santos was seated in the right rear seat, he was wearing his seat belt at the time of the accident.

7.      The parties dispute whether the seat belt buckle at the right rear seating position was functioning properly prior to the accident.

8.      The parties dispute the type of injuries Keilan Santos would have sustained assuming that he was wearing his seat belt during the accident.

9.      The parties dispute whether Christopher Miranda lost control of the Ford Explorer and is at fault for the rollover accident.

10.     The parties dispute whether Christopher Miranda was under the influence of marijuana at the time of the accident.

**AMENDED PRETRIAL ORDER**

11.     The parties dispute whether Defendant's conduct caused or contributed to the death of either Tia Santos or Keilan Santos.

12.     The parties dispute whether Defendant was in any way negligent with respect to Plaintiff's claims in this action.

13.     The parties dispute whether Defendant failed to adequately warn of any known or knowable risk relating to the right front, left rear, and the right rear seating positions of the Ford Explorer.

14.     The parties dispute whether Defendant was in any way responsible for the passenger compartments of the Ford Explorer.

15.     The parties dispute whether Defendant was in any way responsible for the Ford Explorer as an integrated product.

16.     The parties dispute whether the opening of the Ford Explorer's both right passenger side doors, which were also crushed outward during the accident, exposed the occupants to large ejection portals.

17.     The parties dispute whether both decedents from which Plaintiff's claims arise were ejected through the ejection portals created by the opened doors of the Ford Explorer.

18.     The parties dispute whether the Ford Explorer lost virtually all of its window glazing during the accident.

19.     The parties dispute whether occupant-induced friction loads on the right front passenger's seat belt were so high during the rollover that the occupant's clothing actually melted into the structure of the belt.

20.     The parties dispute whether Defendant manufactured the webbing used in the seat belt at the right front and left rear passenger seating position of the Ford Explorer.

21.     The parties dispute whether Defendant designed the webbing used in the seat belt at the right front and left rear passenger seating position of the Ford Explorer.

22.     The parties dispute whether Defendant distributed and sold to Ford Motor Company some of the seat belt restraint components installed in the subject Ford Explorer at the time of the subject incident, including the seat belt webbing, latch plates, buckles, webbing guides, and anchor attachments.

### IV.     Disputed Evidentiary Issues

The disputed evidentiary issues raised below represent those that the parties reasonably anticipate as disputes and the parties reserve the right to move in limine on other issues or matters that are in dispute

**AMENDED PRETRIAL ORDER**

between and among them.  The parties also reserve the right to abandon any of the disputed evidentiary issues raised above.

     A. <u>Plaintiff Anticipates The Following Evidentiary Disputes Which Should Be Resolved By Motion In Limine.</u>

     Plaintiff objects to the reference to, or introduction of evidence concerning, among other things:

1.   The application, response, and orders relating to the temporary restraining order issued against Robert Santos with regard to Plaintiff.

2.   That the driver Christopher Miranda was alleged to have been driving under the influence of marijuana, possessed marijuana, or that there was marijuana and drug-related paraphernalia in the subject vehicle.

3.   The criminal prosecution of Christopher Miranda.

4.   Evidence introduced for the first time in Defendant's Supplemental Disclosure of Expert Witness Information served on February 17, 2010.

5.   Evidence or reference to rollover test videos and reports not conducted by Defendant's experts and under circumstances that are dissimilar to the conditions of the subject incident.

6.   Evidence or reference to the quasi-static spit test observed by Defendant's experts.

7.   Evidence of or reference to prior claims made by Robert Santos that the seat belts in the subject Ford Explorer were in a defective condition prior to the subject incident. With respect to Plaintiff's expected motion in limine number (4) as described, above, Defendant offered Plaintiff the opportunity to depose Peter Luepke, at Plaintiff's own expense, again prior to the commencement of trial, which Plaintiff refused.

     B. <u>Defendant Anticipates The Following Evidentiary Disputes Which Should Be Resolved By Motion In Limine.</u>

     Defendant objects to the reference to, or introduction of evidence concerning, among other things:

1.   Any mention of purported seat belt defects or failures other than those placed at issue by Plaintiff.

2.    Unrelated products, unrelated defects and dissimilar incidents.

3.   Defendant's post-manufacture conduct (for example, if at any time following the accident, Defendant supplied or supplies different parts for Ford Explorers other than those used in the subject Ford Explorer).

**AMENDED PRETRIAL ORDER**

4.   Inflammatory photographic, video or oral evidence or other testimony designed to play on jury emotions of sympathy for the Plaintiff rather than genuine evidence of wrongdoing by Defendant.

5.   To the extent Plaintiff intends to rely on experimentation, any "artificial" unscientific experiments.

6.   Characterization of Plaintiff as a single mother or references to prior hardships in her life.

7.   Past or present claims or lawsuits pending against Defendant, other than this case.

8.   Criticism of Defendant or any of its employees for activities not related to the issues in this case.

9.   Testimony by any treating psychologist or psychiatrist of Plaintiff.

Defendant also intends to move to bifurcate damages from liability and to move to preclude some or all of the testimony of Plaintiff's experts Wilson Toby Hayes (accident reconstruction, biomechanics and occupant kinematics) and William Broadhead (occupant restraints) in accord with footnote 3 of the Court's Order on TRW's Motion for Summary Judgment.

## V.   Special Factual Information

(A) Plaintiff's Statement: In 2004, Plaintiff Tracy Yu-Santos was a single mother raising a daughter, 17 year old Tia Santos, and a son, 14 year Keilan Santos.  On Christmas Day, Tia and Keilan Santos, together with their cousins, Daniel Torres Santos and Paloma Santos, and Christopher Miranda a friend of Tia's were driving in Plaintiff's 1998 Ford Explorer. Christopher Miranda was driving the Explorer south on Interstate 5, approximately 1.6 miles south of Oxford Avenue, at approximately 75-80 mph (the posted speed limit for this portion of Interstate 5 was 70 mph) when he lost control of the vehicle as he attempted to avoid suddenly slowing traffic. The vehicle left the roadway and overturned, fully ejecting all four passengers from the rolling vehicle. Both Plaintiff's son and daughter suffered catastrophic injuries as a result of being ejected from the Ford Explorer and were pronounced dead at the scene of the subject accident, as was Plaintiff's niece.  Plaintiff's nephew was pronounced dead by paramedics while in transport to the hospital. Christopher Miranda, the only non-relative involved in this tragedy and, significantly, the only occupant retained inside the vehicle throughout the rollover, was the sole survivor of the crush, receiving only minor injuries.

There is no dispute that the seat belt webbing in two of the seating positions, that of Plaintiff's daughter Tia Santos and the left rear seat belt, separated, not as the result of being cut, but rather, as a result of the loading of the belt by the occupants.  Furthermore, there is a dispute that the seat belt restraint system in a third seating position, the right rear, was rendered inoperative in the crash when the buckle separated

**AMENDED PRETRIAL ORDER**

from the buckle housing.

There is no dispute that Defendant manufactured the seat belts installed in the subject Ford Explorer.  The central issue in this case is whether the failure of the seat belt restraint systems was the result of a manufacturing defect in the seat belts.  The webbing of these seat belts was designed to withstand up to 6,100 pounds before breaking or separating when in a new condition, and to withstand up to a minimum of 4,600 pounds in a used condition.  Plaintiff's experts have testified that these belts could not have experienced these threshold levels of loading in this rollover.  Therefore, Plaintiff contends that because these belts failed under loads lower than their design criteria and were, therefore, defective in manufacture. Defendant is liable to Plaintiff for the wrongful death of her children under theories of strict product liability (manufacturing defect), negligence, and failure to warn.

Defendant's Response to Plaintiff's Statement: Defendant objects to Plaintiff's characterization of herself and to her references to the condition of any of the seat belt assemblies not placed at issue by Plaintiff in this action.  Defendant agrees that the Ford Explorer was traveling in excess of the posted speed limit at some point prior to the rollover and that its trip speed was at a similar highway speed.  Defendant disputes that Miranda was attempting to avoid suddenly slowing traffic when he lost control of the Ford Explorer.  Defendant disputes the significance that Plaintiff places on Miranda as the "sole survivor" and disputes that Miranda sustained "only minor injuries" because the occupant kinematics and exposure to ejection portals were different for him compared to the decedents.

Defendant disputes that either of the seat belt assemblies at the seating positions placed at issue by the First Amended Complaint failed under loads lower than their design criteria. Instead, Defendants maintain that these seat belt assemblies were not defective in manufacture. Defendant similarly disputes Plaintiff's characterization of the design criteria, which misstates both the operative Ford Motor Company engineering specifications and the applicable Federal Motor Vehicle Safety Standards ("FMVSS"). Moreover, Defendant neither designed nor manufactured the webbing for any of the seat belts in the Ford Explorer.  Defendant thus disputes that it manufactured, in whole, the seat belt assemblies installed in the Ford Explorer. In addition, Defendant maintains that Keilan Santos was not even wearing his seat belt at the time of the accident, and that his seat belt was not functioning properly prior to the accident (despite having functioned properly when it left Defendant for shipment to Ford Motor Company).  Plaintiff knew about the

**AMENDED PRETRIAL ORDER**

1  improper working condition of the right rear seat belt for some time prior to the accident, but failed to correct

2  or even address that condition before letting her children ride in the vehicle.

3        Defendant does not dispute that "[t]he central issue in this case is whether the failure of the seat belt

4  restraint systems was the result of a manufacturing defect in the seat belts."   Defendant disputes that it is

5  liable to Plaintiff for the wrongful death of her children under theories of strict product liability

6  (manufacturing defect), negligence, and failure to warn.  The accident was caused by Miranda and resulted in

7  such a severely chaotic and violent accident-with some of the highest roll rates, number of rolls and roll

8  distance ever documented-that the Ford Explorer experienced the opening and deformation of both right

9  passenger side doors, exposing the decedents to ejection portals, vulnerability to repeated ground contact,

10  and tremendous centrifugal forces that would not be exerted upon occupants retained fully inside the vehicle

11  cabin by closed doors and intact window glazing.  Such forces ultimately caused the right front passenger's

12  seat belt webbing to separate despite its compliance with all applicable specifications and reasonable safety

13  measures.  The right rear occupant of the Ford Explorer was not wearing a seat belt at the time of the

14  accident and his seat belt did not function properly prior to the accident.

15        Plaintiff has never identified a seat belt manufacturing defect theory to a reasonable degree of

16  engineering certainty for either the right front or right rear seating positions.  No act or omission by

17  Defendant proximately caused Plaintiff's alleged damages in this action.

18        (B) <u>Plaintiff's Statement</u>: Plaintiff Tracy Yu-Santos is 47 years old and has suffered injury as a

19  result of the wrongful death of her 17 year old daughter and 14 year old son.  Upon establishing liability

20  against Defendant, Plaintiff will be entitled to the following economic damages:  1) the value of the

21  financial support, if any, that Tia and Keilan Santos would have contributed to the family during either the

22  life expectancy of Plaintiff Tracy Yu-Santos; 2) the loss of gifts or benefits that Plaintiff Tracy Yu-Santos

23  could have expected to receive from Tia and Keilan Santos; 3) funeral and burial expenses; and 4) the

24  reasonable value of household services that Tia and Keilan Santos would have provided.  Plaintiff will

25  also be entitled to non-economic damages for the loss of Tia and Keilan Santos' love, companionship,

26  comfort, care, assistance, protection, affection, society, and moral support.

27        <u>Defendant's Response to Plaintiff's Statement</u>: Plaintiff does not contend that Plaintiff personally

28  sustained injuries as a result of the accident and therefore any of her prior injuries, conditions that may

**AMENDED PRETRIAL ORDER**

have worsened, periods of hospitalization, medical expenses and estimated future medical expenses, the period of total and/or partial disability, annual, monthly, or weekly earnings before the incident, earnings loss to date and estimated diminution of future earnings power, and property damage, if any, are inapplicable to this action.  Plaintiff's general damages are limited to the economic and non-economic damages described in Plaintiff's Statement above. Defendant disputes that Plaintiff is entitled to any damages.  Plaintiff has no claim for punitive damages.

(C) <u>Plaintiff's Statement</u>: Plaintiff Tracy Yu-Santos is 47 years old.  On December 25, 2004, her 17 year old daughter Tia Santos and her 14 year old son Keilan Santos were killed in the subject incident.

<u>Defendant's Response to Plaintiff's Statement</u>: Defendant contends that neither Tia Santos nor Keilan Santos provided annual, monthly, or weekly contributions to Plaintiff before their deaths and further Plaintiff was not a dependent of them.  Defendant maintains that Plaintiff is unable to produce evidence concerning the physical condition, education, and training of decedents at the time of their deaths.

**VI.   <u>Relief Sought</u>:**

If the jury decides in favor of Plaintiff and against Defendant, Plaintiff will be entitled to the following economic damages:  1) the value of the financial support, if any, that Tia and Keilan Santos would have contributed to the family during their life expectancies prior to their deaths or the life expectancy of Plaintiff, whichever is shorter; 2) the loss of gifts or benefits that Plaintiff could have expected to receive from Tia and Keilan Santos; 3) funeral and burial expenses; and 4) the reasonable value of household services that Tia and Keilan Santos would have provided.  Plaintiff will also be entitled to non-economic damages for the loss of Tia and Keilan Santos' love, companionship, comfort, care, assistance, protection, affection, society, and moral support. Judicial Council of California Civil Jury Instructions ("CACI") 3922 (2007). Plaintiff does not seek any other relief from Defendant.

If the jury decides that Plaintiff's harm includes future economic damages, then the amount of those future damages must be reduced to their present cash value.  CACI 3904 (2008). The jury may not award any compensation for Plaintiff's grief, sorrow, or mental anguish, Keilan Santos' pain and suffering or Tia Santos' pain and suffering.  The present cash value of the probable costs of Tia and Keilan's support and education should be deducted from any award. CACI 3922.

///

**AMENDED PRETRIAL ORDER**

## VII.   Points of Law

Plaintiff contends that Defendant is liable under theories of strict product liability for manufacturing defect, negligent product liability, failure to warn, and breach of implied warranty of merchantability.  Under California law, for Defendant to be held strictly liable for a manufacturing defect, Plaintiff must establish the following:

1.   That Defendant manufactured, distributed, or sold the product;

2.   That the product contained a manufacturing defect when it left Defendant's possession;

3.   That the product was used in a way that was reasonably foreseeable to Defendant;

4.   That Plaintiff was harmed; and

5.   That the product's defect was a substantial factor in causing Plaintiff's harm. CACI 1201 (2007).

In order to establish causation, Plaintiff must demonstrate that the defect was a "substantial factor" in causing the harm to Plaintiff's decedents.  "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm."  CACI 430 (2007).

To hold Defendant liable for negligence, Plaintiff must establish that Defendant failed to use the amount of care in manufacturing and inspecting the product that a reasonably careful manufacturer or supplier would use in similar circumstances to avoid exposing others to a foreseeable risk of harm.  CACI 1221 (2007).

To hold Defendant liable for strict liability failure to warn, Plaintiff must establish that:

1.   Defendant manufactured, distributed, or sold the product;

2.   That the product had potential risks that were known or knowable by the use of scientific knowledge available at the time of manufacture, distribution, or sale;

3.   That the potential risks presented a substantial danger to users of the product;

4.   That ordinary consumers would not have recognized the potential risks;

5.   That Defendant failed to adequately warn of the potential risks;

6.   That Plaintiff was harmed while using the product in a reasonably foreseeable way; and

7.   That the lack of sufficient warnings was a substantial factor in causing Plaintiff's harm. CACI 1205 (2009).

**AMENDED PRETRIAL ORDER**

To hold Defendant liable for negligent failure to warn, Plaintiff must establish that:

1.   That Defendant manufactured, distributed, or sold the product;

2.   That Defendant knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner;

3.   That Defendant knew or reasonably should have known that users would not realize the danger;

4.   That Defendant failed to adequately warn of the danger;

5.   That a reasonable manufacturer under the same or similar circumstances would have warned of the danger;

6.   That Plaintiff was harmed; and

7.   That Defendant's failure to warn was a substantial factor in causing Plaintiff's harm. CACI 1222 (2007).

Defendant maintains there is no manufacturing defect that proximately caused Plaintiff's damages in any product supplied by Defendant to Ford Motor Company, pursuant to the specifications set by Ford Motor Company and FMVSS, for installation into the Ford Explorer. In addition, the right rear seat belt in the Ford Explorer was not functioning properly prior to the accident and was not properly maintained or repaired despite having left Defendant in proper working condition.  Moreover, the right rear occupant was not wearing his seat belt at the time of the accident.

Defendant contends the severity and violence of the rollover was an intervening factor that superseded any purported seat belt defect as the cause of Plaintiff's damages.  See, e.g., Endicott v. Nissan Motor Corp., 73 Cal.App.3d 917, 926 (1977) ("If the violence of a crash is the effective efficient cause of the plaintiff's injuries to the extent that it supersedes other factors such as defective design and makes them immaterial, plaintiff cannot recover."); Paverud v. Niagara Machine and Tool Works, 189 Cal.App.3d 858, 863 (1987) (overruled on other grounds); Restatement Second of Torts (1965), § 440; Stewart v. Cox, 55 Cal.2d 857, 864 (1961); Hardison v. Bushnell, 18 Cal.App.4th 22, 26 (1993).

Defendant contends that if the jury were to find against Defendant and in favor of Plaintiff, any judgment must be reduced and apportioned by deducting any liability of joint tortfeasors, whether they are parties to the lawsuit or third-parties.  CACI 405; Li v. Yellow Cab Co., 13 Cal.3d 804, 810 (1975); Civil Code § 1431.2(a)(providing for the apportionment of liability for non-economic damages); see, e.g., Taylor v. Crane Inc., 113 Cal.App.4th 1063, 1068-71 (2003) (explaining that purpose of Civil Code section 1341.2

**AMENDED PRETRIAL ORDER**

"is simply intended to limit the potential liability of an individual defendant for noneconomic damages to a proportion commensurate with that defendant's personal share of fault") (citing <u>DaFonte v. Up-Right, Inc.</u>, 2 Cal.4th 593, 600 (1992)).

Additionally, Defendant contends the component supplier doctrine, learned intermediary and sophisticated user doctrine and application of federal preemption with regard to the operative standards for the seat belt assemblies in question are among other affirmative defenses available to Defendant.

## VIII.   **Abandoned Issues**

Plaintiff has settled all claims against Defendant Ford Motor Company which has been dismissed from this action.  Furthermore, pursuant to the Court's prior ruling on TRW's Motion for Summary Judgment, all claims against Defendants TRW Automotive Holdings Corp., TRW Automotive, Inc., and TRW Automotive U.S., LLC, have been dismissed, as was Plaintiff's first cause of action against Defendant for strict liability-right front webbing design defect claim and Plaintiff's fourth cause of action against Defendant for breach of warranty.

Defendant abandons the following affirmative defenses it asserted in its Answer to Plaintiff's First Amended Complaint filed on February 22, 2007: First Affirmative Defense for Statute of Limitations; Second Affirmative Defense for Failure to State a Claim; Twenty-Fifth Affirmative Defense for Waiver, Estoppel, and Laches; Twenty-Ninth Affirmative Defense for Improper Venue; and Thirtieth Affirmative Defense for Improper Forum.  Additionally, in light of the Court's ruling on TRW's Motion for Summary Judgment, Defendant abandons the following affirmative defenses because they are no longer applicable: Fifteenth Affirmative Defense for Failure to Give Timely Notice of Any Claimed Breach of Warranty; and Sixteenth Affirmative Defense for No Privity.

## IX.   **Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

///

**AMENDED PRETRIAL ORDER**

Plaintiff's Witness List

1.  Appel, Michael

2.  Arenas, Tammy

3.  Batra, Priya

4.  Bowers, William

5.  Broadhead, William

6.  Cervantes, Loralee

7.  Chism, D.

8.  Collazo, R.

9.  Comstock, Steven

10. Cruz, E.

11. Custodian of Records-American Ambulance

12. Custodian of Records-California Division of Forestry

13. Custodian of Records-Sacramento County Mental Health Treatment Center

14. Custodian of Records Riggs Ambulance-Custodian of Records

15. Sierra Vista Hospital

16. Emehiser, Dean Joseph

17. Gopal, Venu, M.D.

18. Hance, Amy

19. Hayes, William C.

20. Heredia, Darin

21. Jenkins, Jeffrey

22. Johnson, Doug

23. Jurkowsky, Paul

24. Lion, Alex

25. Luepke, Peter

26. Martorana, Christian M.

27. Miller, Gregory A.

**AMENDED PRETRIAL ORDER**

28. Miller, Jeff

29. Miranda, Christopher

30. Moffatt, Edward

31. Nichols, Donnie

32. Parton, Walter

33. Pereira, R.

34. Peterson, Roger

35. Ramos, Olivia

36. Santos, Robert

37. Serrano, Juan Carlos

38. Sprinkman, Marvin

39. Tucker, Brandon

40. Vandermeer, Nick

41. Wright, G.

42. Yu-Santos, Tracy

43. Zaver, Mara

Defendant's Witness List

1. Appel, Michael

2. Arenas, Tammy

3. Beitia, Michael

4. Bowers, William

5. Cervantes, Loralee

6. Chism, D.

7. Collazo, R.

8. Comstock, Steven

9. Cruz, E.

10. Custodian of Records -American Ambulance

11. Custodian of Records - Big O Tires

-14-

**AMENDED PRETRIAL ORDER**

12. Custodian of Records-California Division of Forestry

13. Custodian of Records-Sacramento County Mental Health Treatment Center

14. Custodian of Records-Riggs Ambulance

15. Custodian of Records-Sierra Vista Hospital

16. Davis, Flora

17. Emehiser, Dean Joseph

18. Ferrer, Leonora

19. Fresno County District Attorney's Office (Representative)

20. Gonzalez, Jessica

21. Gopal, Venu, M.D.

22. Hance, Amy

23. Heredia, Darin

24. Jenkins, Jeffrey

25. Johnson, Doug

26. Lion, Alex

27. Luepke, Peter

28. Martorana, Christian M.

29. Miller, Gregory A.

30. Miller, Jeff

31. Miranda, Caroline

32. Miranda, Christopher

33. Miranda, Ralph

34. Moffatt, Edward

35. Negron, Ana

36. Nichols, Donnie

37. Parton, Walter

38. Pereira, R.

39. Peterson, Roger

**AMENDED PRETRIAL ORDER**

40. Ramos, Olivia

41. Santos, Robert

42. Serrano, Juan Carlos

43. Sprinkman, Marvin

44. Tucker, Brandon

45. Vandermeer, Nick

46. Wright, G.

47. Yu-Santos, Tracy

48. Zaver, Mara

## X.     Exhibits

See Eastern District CM/ECF Court Docket Document No. 93, Parties' Joint Exhibit List, identified as Exhibit 3.  The Joint Exhibit List contains 3321 exhibits.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

## XI.     Discovery Documents To Be Used at Trial (Answers to Interrogatories and Responses to Requests for Admissions)

Plaintiff intends to offer and Defendant may offer at trial the following deposition testimony:

1. Jeff Jenkins The parties intend to offer at trial the following deposition testimony:

2. Custodians of Records for various third party entities in order to lay foundation that certain documents are the business records of those third party entities. The parties are currently unaware of any other witnesses that are beyond the subpoena power of the Court.  The parties reserve the right to amend this list should new information come to light regarding the unavailability of any other witnesses.

Plaintiff may offer at trial the following responses of Defendant to special interrogatories: 8, 9, 10, 11, 12, 13, and 20.

Plaintiff may offer at trial the following responses of Defendant to requests for admission: 1, 2, 3, 4, 5, 7, and 14.

Defendant may offer at trial the following responses and supplemental responses of Plaintiff

**AMENDED PRETRIAL ORDER**

to Defendant's Special Interrogatories: 3, 4, 12, 13, 14, 15, 17, 19, 20, 21 and 27.

Defendant may offer at trial the following responses and supplemental responses of Plaintiff to Defendant's Requests for Admission: 32, 33, 34 and 35.

Defendant may offer at trial the following responses of Plaintiff to Ford Motor Company's Special Interrogatories: 2, 3, 5 and 6.

Defendant may offer at trial the following responses of Plaintiff to Ford Motor Company's Requests for Admission: 1 and 3.

Defendant may offer at trial Plaintiff's Separate Statement of Disputed and Undisputed Material Facts Nos.: 10, 11, 14 and 16.

**XII.   Further Discovery or Motions**

Plaintiff does not anticipate the need for the filing of any further discovery or pretrial motions, except for motions in limine.

Plaintiff has listed Christopher Miranda, the driver of the Ford Explorer at the time of the accident, on her trial Witness List.  Based solely on Plaintiff's addition, Defendant has also added Miranda to its trial Witness List.  Consistent with the March 11, 2008 Order on Stipulation to Modify Scheduling Order to Continue Deposition of Witness Christopher Miranda, Plaintiff currently represents that diligent efforts had been made to locate Miranda but that despite her diligent efforts, Miranda has still not been located and no current address has been confirmed. Plaintiff and Defendant mutually agree to inform the other if they locate Miranda prior to trial.  If Miranda is located, Defendant requests the opportunity to depose Miranda a reasonable time before trial commences or, in the alternative, at least a reasonable time before he is called as a trial witness.

Pursuant to the Court's order granting Plaintiff's Motion to Amend the Pretrial Order, the Court has ordered that the parties may conduct the following additional discovery :

1.   Plaintiff shall immediately make her experts available to Defendant for re-deposition on the sole issue of the left rear seat belt and seat.

2.   Plaintiff shall immediately allow Defendant to inspect the seat belt assembly and seat in the left rear seating position.

3.   Plaintiff shall be allowed to re-depose Defendant's experts regarding their analyses and

**AMENDED PRETRIAL ORDER**

opinions concerning the left rear seat belt assembly and left rear seating position before they testify at trial.

4.   The Court will authorize the issuance, on Defendant's request, for subpoenas or subpoenas *duces tecum* for any witnesses that it thinks exist on the issue of the position of Keilan Santos in the left rear seat.  Further, on shortened notice, the Court will permit Defendant to re-open discovery to conduct any further fact investigation and analysis surrounding the accident.

5.   The parties shall be permitted to designate experts in the field of toxicology for the purposes of conducting a foundational hearing pursuant to Federal Rules of Evidence, Rule 104, regarding the admissibility of evidence of marijuana use by the driver of the subject vehicle, Christopher Miranda.

### XIII.   Stipulations

The parties stipulate and agree that neither party will introduce evidence concerning or make reference to the following matters: (1) any mention of the size of Defendant's law firm; (2) any reference to Defendant other than as TRW, TRW Vehicle Safety Systems Inc., TRW VSSI, or Defendant, or to the size of the company or its net worth; and (3) any mention that Defendant and Plaintiff have engaged in settlement discussions.

Plaintiff and Defendant further stipulate to rely on deposition testimony of the Custodians of Records for various third party entities in order to lay foundation that certain documents are the business records of those third party entities.

### XIV.   Amendments/Dismissals

Plaintiff does not request any amendments to the pleadings unless the Court intended to allow the Complaint to go to the jury, in which case Plaintiff would seek to amend the Complaint to remove references to dismissed parties and causes of action.

Defendant does not request any amendments to the operative pleadings.

### XV.   Settlement Negotiations

The parties have indicated that they are amenable to a court settlement conference under Local Rule 270.  If the parties wish to have a formal settlement conference they are to contact the assigned Magistrate Judge.

### XVI.   Agreed Statements

While the parties expect they will be able to stipulate to certain facts, the parties do not believe that

**AMENDED PRETRIAL ORDER**

presentation of all or part of the action upon an Agreed Statement of Facts is feasible or advisable.

### XVII.   Separate Trial of Issues

Plaintiff does not believe that separate trials of any of the issues are feasible or advisable.
Defendant intends to move to bifurcate damages from liability.

### XVIII. Impartial Experts-Limitation of Experts

The parties submit that no court-appointed experts are needed and that no limitation on the number of expert witnesses is advisable, except to say that the Court should not allow more than one expert for a party to testify regarding any single opinion or area of expertise.  As noted above, Plaintiff and Defendant intend to limit the testimony of experts through motions in limine.

### XIX.   Attorneys' Fees

There are no statutory provisions for the award of attorney's fees in this action.

### XX.    Trial Exhibits

The parties do not anticipate the need for any special handling of trial exhibits. Plaintiff intends to utilize Sanctions Trial Presentation Software for the publication of exhibits to the Court, defense counsel, and the witnesses, and upon admission of such exhibits into evidence, for publication to the jury.  Plaintiff also intends to utilize Sanctions Trial Presentation Software for the publication of agreed upon exhibits during opening statement, and admitted evidence during closing argument.

Defendant intends to utilize the Court's ELMO visual presenter for its documentary exhibits that are admitted into evidence.  Defendant also intends to utilize power point presentations, easels employing a large pad of paper and blown-up exhibits and/or demonstratives. Defendant may need to make use of a table or some benches for some of its demonstratives.

### XXI.   Further Trial Preparation

A. Final Witness List

The parties are ordered to file and serve their final list of witnesses by 12:00 p.m. (Noon) on May 27, 2010.  Additionally, at that time Plaintiff shall disclose the order of witnesses so that Defendant will be prepared for cross-examination.

Except upon the showing set forth above in Section IX, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section IX.

**AMENDED PRETRIAL ORDER**

B. Trial Briefs

The parties filed and served trial briefs by 4:00 p.m. on May 24, 2010 pursuant to Local Rule 285. A response to a trial brief may be filed by 4:00 p.m. on May 28, 2010.

C. Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer for purposes of pre-marking and examining each other's exhibits. All joint exhibits must be pre-marked with numbers preceded by the designation JT/-(e.g., JT/1, JT/2). All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1. Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff on May 27, 2010, one for use by the Courtroom Clerk and the other for the court; and

(b) One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2. Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b) As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation. 22

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B For

**AMENDED PRETRIAL ORDER**

1    Identification, and indexed in a column entitled "Objection Foundation."

2    (d) Remaining exhibits as to which there are objections to admissibility not solely based on a

3    lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 For

4    Identification or Defendants' Exhibit C - For Identification, and indexed in a third column

5    entitled "Other Objection" on the offering party's index.

6    3. Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit,

7    and the three columns outlined above, as demonstrated in the example below:

8                                              INDEX OF EXHIBITS

9                                    ADMITTED  OBJECTION  OTHER

10   EXHIBIT #  DESCRIPTION    IN EVIDENCE          FOUNDATION          OBJECTION

11   Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom

12   Clerk with the two sets of binders on May 27, 2010 by 4:00 p.m.

13   The court has no objection to counsel using copies.  However, the copies must be legible. If any

14   document is offered into evidence that is partially illegible, the court may *sua sponte* exclude it from

15   evidence.

16   D. Discovery Documents

17   By 12:00 p.m. (Noon) on May 27, 2010, each party shall file a list of all discovery documents

18   the party intends to use at trial.  The list shall indicate whether each discovery document has previously

19   been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall

20   so lodge the document with the Courtroom Clerk by .

21   E. Motions In Limine Hearing and Briefing Schedule

22   The hearing for motions in limine, including cross-motions in limine regarding the need for expert

23   testimony, is set for May 18 and May 19, 2010 at 9:00 a.m. in Courtroom 2.  Motions in limine are to be

24   filed by 4:00 p.m. on March 29, 2010.  Opposition briefs are to be filed by 4:00 p.m. on April 19, 2010.

25   Reply briefs may be filed by 4:00 p.m. on May 3, 2010.

26   F. Morning Conferences During Trial

27   During the trial, it is the obligation of counsel to meet with the court each morning to advise the court

28   and opposing counsel as to what documents are proposed to be put into evidence that have not previously

**AMENDED PRETRIAL ORDER**

been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

G. Order Of Witnesses

To make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call forty eight

(48) hours prior to calling that witness.

H. Voir Dire

The parties shall file proposed voir dire questions, if any, by 12:00 p.m. (Noon) on May 27, 2010.

Additionally, in order to aid the court in the proper voir dire examination of the prospective jurors, counsel are directed to lodge with the court on the first morning of trial a list of the prospective witnesses they expect to call, omitting any witness listed in this Pre-Trial Order whom the party no longer intend to call.  This list shall contain the names of the each witness, and the business and/or home address of each witness.

I.  Proposed Jury Instructions

The parties shall file proposed jury instructions by 12:00 p.m. (Noon) on May 27, 2010, and email a copy of the proposed instructions formatted for **WordPerfect 10** to Courtroom Clerk Harold Nazaroff.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer immediately after the trial confirmation hearing to determine which

**AMENDED PRETRIAL ORDER**

instructions they agree should be given.  As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those instructions to which the parties dispute, the court will conduct its jury instruction conference during trial at a convenient time.

### J.  Proposed Verdict Form

Each party shall file a proposed verdict form by 12:00 p.m. (Noon) on May 27, 2010.

### K. Use Of Videotapes

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by May 27, 2010.  If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

### L.  Use of Laptops

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

### M. Agreed Summary Of The Case

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by 12:00 p.m. (Noon) on May 27, 2010. The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

### N. Depositions

The parties shall lodge with the Courtroom Clerk deposition transcripts on or by May 27, 2010.

## XXII.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 283.  Such objection shall specify the requested corrections, additions or deletions.

///

**AMENDED PRETRIAL ORDER**

1    **XXIII. <u>Rules of Conduct During Trial</u>**

2        A. <u>General Rules</u>

3        1.       All participants in the trial shall conduct themselves in a civil manner.  There shall be no

4    hostile interchanges between any of the participants.

5        2.       All oral presentations shall be made from the podium, unless otherwise permitted by the

6    court.

7        3.       Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the

8    presence of the jury should be done during recesses.

9        4.       Counsel shall advise their respective clients and witnesses not to discuss any aspect of the

10   case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the

11   hallways and the cafeteria.

12       B. <u>Jury Selection</u>

13       1. The court will conduct voir dire to be supplemented by any written questions submitted by counsel

14   prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the

15   court may allow brief direct questioning by counsel. Eight jurors shall try the case.  Each side shall have

16   four(4) preemptory challenges.

17       C. <u>Opening Statements</u>

18       1. Counsel may use visual aids in presenting the opening statement.  However, any proposed visual

19   aids shall be shown to opposing counsel before opening statement.

20       D. <u>Case in Chief</u>

21       1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the

22   presentation of evidence to the trier of fact.

23       2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of

24   presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

25       E. <u>Witnesses</u>

26       1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

27       2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing

28   counsel.

       F. <u>Exhibits</u>

-24-

**AMENDED PRETRIAL ORDER**

1      1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial

2  Order.

3      2.  An exhibit shall not be published to the jury until it has been admitted into evidence and counsel

4  has secured leave of court to publish the exhibit.

5      3.  The court usually will conduct an on the record review of the exhibits that have been admitted in

6  evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

7     G. <u>Objections</u>

8      1.  No speaking objections or arguments are permitted in the presence of the jury.  Counsel shall state

9  the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The

10  court will permit counsel to argue the matter at the next recess.

11      2.  The court will not assume that any objection made also implies with it a motion to strike an

12  answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an

13  answer stricken, shall also specifically move to strike the answer.

14     H. <u>Closing Argument</u>

15     1. Counsel may use visual aids in presenting the closing argument.  However, any proposed

16  visual aids shall be shown to opposing counsel before closing argument.

17  <u>FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE</u>

18  <u>IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY</u>

19  <u>OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-</u>

20  <u>COMPLIANCE WITH THIS ORDER.</u>

24  IT IS SO ORDERED.

25    Dated:  __**June 3, 2010**__             _____**/s/ Oliver W. Wanger**

26                           UNITED STATES DISTRICT JUDGE

**AMENDED PRETRIAL ORDER**